UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BOBBY LAYTHEN BINFORD, | Case No.  C06-5364RBL-KLS |
| Plaintiff, | |
| | REPORT AND |
| v. | RECOMMENDATION |
| TERRY BENDA, *et al*., | Noted for July 27, 2007 |
| Defendants. | |

This matter has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4.  This matter comes before the court on defendants' motion for summary judgement. (Dkt. #23).  Having reviewed defendants' motion, plaintiff's response thereto, defendants' reply, plaintiff's surreply, and the remaining record, the undersigned submits the following report and recommendation for the Honorable Ronald B. Leighton's review.

PROCEDURAL AND FACTUAL BACKGROUND

This case involves a civil rights action under 42 U.S.C. § 1983 filed by plaintiff on June 27, 2006, against defendants Terry Benda, an institutional investigator at the Clallam Bay Corrections Center ("CBCC") located at Clallam Bay, Washington, and John Aldana, the Associate Superintendent at CBCC. (Dkt. #1 and #5).  Plaintiff alleges in his complaint that defendants: retaliated against him for exercising his First Amendment rights to freedom of speech, freedom of religion, access the courts, and petition the government for redress of his grievances; violated his right to equal protection under the law by

1   discriminating against him on the basis of race; and violated his due process right to appeal an adverse

2   administrative classification decision. See Complaint.  Plaintiff further alleges that defendant Benda

3   slandered him. Id., p. 5.  He seeks a total of $150,000.00 in damages against defendants. Id., p. 20.

4          In their motion for summary judgment, which was filed on April 11, 2007, defendants argue

5   plaintiff has failed to assert a valid section 1983 claim for violation of his civil rights.  Specifically, they

6   argue plaintiff has not shown that he was retaliated against for exercising his First Amendment rights or

7   demonstrated that his rights to due process or equal protection under the law were violated.  Defendants

8   further argue plaintiff has not established defendant Benda slandered him.  Lastly, defendants argue this

9   matter should be dismissed based on plaintiff's failure to prove personal participation in the harm alleged

10  on their part and because they are entitled to qualified immunity.

11         In response to defendants' motion, on May 1, 2007, plaintiff filed his own "motion for judgment as

12  a matter of law." (Dkt. #24).  As noted by defendants, plaintiff's motion was filed well past the April 11,

13  2007 deadline for filing dispositive motions.  See (Dkt. #18).  Nevertheless, the undersigned shall consider

14  it both as plaintiff's response to defendant's motion and a motion in its own right.  Defendants have filed a

15  response/reply to plaintiff's motion (Dkt. #25), and plaintiff has filed a surreply thereto. (Dkt. #26).  As

16  such, both parties' motions are now ripe for consideration.

17         The specific facts alleged in this case shall be addressed in the discussion section below.

18                                          DISCUSSION

19         Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no

20  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

21  Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(c).  In deciding whether summary judgment should

22  be granted, the Court must view the record in the light most favorable to the nonmoving party and indulge

23  all inferences favorable to that party. Fed. R. Civ. P. 56(c) and (e).  When a summary judgment motion is

24  supported as provided in Fed. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or

25  denials of his pleading, but his response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must

26  set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e).  If the nonmoving

27  party does not so respond, summary judgment, if appropriate, shall be rendered against that party. Id

28         The moving party must demonstrate the absence of a genuine issue of fact for trial.  Anderson v.

REPORT AND RECOMMENDATION
Page - 2

1  Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  Mere disagreement or the bald assertion that a genuine

2  issue of material fact exists does not preclude summary judgment.  California Architectural Building

3  Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).  A "material" fact is one

4  which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the

5  suit," and the materiality of which is "determined by the substantive law governing the claim." T.W.

6  Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

7  Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of

8  summary judgment." Id.  Rather, the nonmoving party "must produce at least some 'significant probative

9  evidence tending to support the complaint.'" Id. (quoting Anderson, 477 U.S. at 290); see also California

10  Architectural Building Products, Inc., 818 F.2d at 1468 ("No longer can it be argued that any disagreement

11  about a material issue of fact precludes the use of summary judgment.").  In other words, the purpose of

12  summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory

13  allegations of an affidavit." Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990).

14  I.   Standard of Review for Section 1983 Claims

15  To state a claim under 42 U.S.C. § 1983, a complaint must allege: (i) the conduct complained of

16  was committed by a person acting under color of state law, and (ii) the conduct deprived a person of a

17  right, privilege, or immunity secured by the Constitution or laws of the United States.  Parratt v. Taylor,

18  451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986).  Section

19  1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present.

20  Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985).  The plaintiff also must allege facts showing

21  how the individually named defendants caused or personally participated in causing the harm alleged in the

22  complaint.  Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981).

23  A defendant will be deemed to have deprived the plaintiff "of a constitutional right, within the

24  meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to

25  perform an act which he is legally required to do that causes the deprivation of which [the plaintiff

26  complains]." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis in original) (citation omitted).

27  A defendant, however, cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory

28  responsibility or position.  Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 n.58

1   (1978).  That is, a theory of *respondeat superior* is not sufficient to state a section 1983 claim.  Padway v.

2   Palches, 665 F.2d 965, 968 (9th Cir. 1982).

3   II.    Plaintiff Has Failed to State a Sufficient Retaliation Claim

4          To state a claim for retaliation, an inmate "must allege both that the type of activity he engaged in

5   was protected under the first amendment and that the state impermissibly infringed on his right to engage in

6   the protected activity." Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985).  The inmate "must allege that

7   he was retaliated against for exercising his constitutional rights and that the retaliatory action does not

8   advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v.

9   Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994); see also Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir.

10  2005) (specifically concerning retaliation for exercising First Amendment rights).

11         Federal courts, however, "should be circumspect when asked to intervene in the operation of state

12  prisons," and "should 'afford appropriate deference and flexibility' to prison officials in the evaluation of

13  proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d

14  802, 806-07 (9th Cir. 1995) (quoting Sandin v. Connor, 115 S. Ct. 2293, 2299 (1995)).  The inmate bears

15  the burden of proving the absence of any legitimate correctional goals. Id. at 806.  Here, plaintiff has not

16  shown either of the named defendants retaliated against him for exercising any of his First Amendment

17  rights to freedom of speech, freedom of religion, access the courts, or petition the government for redress

18  of his grievances.

19         A.    Freedom of Speech

20         As noted by defendants, plaintiff does not specifically articulate how either of them interfered with

21  his First Amendment right to freedom of speech.  In the body of his complaint plaintiff does allege that

22  defendant Benda retaliated against him in part for contacting a local newspaper regarding his "filing a

23  preliminary injunction on May 14, 2004, in Clallam County Superior Court challenging the state's ban on

24  nude pictures." Complaint, p. 9.  Plaintiff, however, has presented no evidence that defendant Benda knew

25  of such contact.  Nor has plaintiff set forth any specific facts, or provided any evidence, showing in what

26  way or manner either defendant retaliated against him for making the above contact.  As such, plaintiff has

27  failed to establish any violation of his First Amendment right to freedom of speech or that defendant Benda

28  and Aldana caused or personally participated in causing such violation or in retaliating against him for

REPORT AND RECOMMENDATION
Page - 4

1   exercising that right.

2       B.   Freedom of religion

3       Defendants argue that to establish a violation of the right to freely exercise his religion, plaintiff

4   must show the state "burdened the practice of his religion, by preventing him from engaging in conduct

5   mandated by his faith, without any justification reasonably related to legitimate penological interests."

6   Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (citing Turner v. Safley, 482 U.S. 78, 89 (1987))

7   (footnote omitted).  To determine whether the state's action is reasonable under that standard, the Court is

8   required to consider the following factors:

9       [W]hether the [state action] has a logical connection with a legitimate government
        interest, whether alternative means exist to exercise the asserted right, and the impact
10      that accommodation of the prisoner's right would have on prison regulations.

11  Id.

12      More recently, however, Congress passed the Religious Land Use and Institutionalized Persons Act

13  of 2000 ("RLUIPA"), which sets forth a different standard for evaluating an inmate's claims that the state

14  has violated his or her right to exercise his or her religion, one that puts a heightened burden on the state.

15  RLUIPA provides in relevant part:

16      No government shall impose a substantial burden on the religious exercise of a person
        residing in or confined to an institution . . . even if the burden results from a rule of
17      general applicability, unless the government demonstrates that imposition of the burden
        on that person--
18
            (1) is in furtherance of a compelling governmental interest; and
19
            (2) is the least restrictive means of furthering that compelling governmental
20      interest.

21  42 U.S.C. § 2000cc-1.  The term "religious exercise" includes "any exercise of religion, whether or not

22  compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).  The Ninth Circuit,

23  furthermore, has held that in enacting RLUIPA, Congress replaced "the 'legitimate penological interest'

24  standard articulated in Turner v. Safley . . . with the 'compelling governmental interest' and 'least

25  restrictive means' tests codified" in RLUIPA. Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005))

26  (citing Cutter v. Wilkinson, 544 U.S. 709, 716-17 (2005)).

27      Under RLUIPA, plaintiff "bears the initial burden of going forward with evidence to demonstrate a

28  prima facie claim" that the challenged state action constitutes "a substantial burden on the exercise of his

religious beliefs." Id.  To be considered a "substantial burden," the challenged state action "must impose a significantly great restriction or onus upon such exercise." Id. at 995.  If the inmate is able to meet this burden, the state then must prove that "any substantial burden" on the "exercise of his religious beliefs is *both* 'in furtherance of a compelling governmental interest' *and* the 'least restrictive means of furthering that compelling governmental interest.'" Id. (quoting 42 U.S.C. § 2000cc-1(a), citing 42 U.S.C. § 2000cc-2(b)) (emphasis in original).  In addition, RLUIPA "is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id.

On the other hand, the Supreme Court has not read RLUIPA as elevating the "accommodation of religious observances over an institution's need to maintain order and safety." Cutter, 125 S.Ct. at 2122.  Any accommodation "must be measured so that it does not override other significant interests." Id.  The Supreme Court also has noted that Congress anticipated the courts would apply RLUIPA:

> [W]ith "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."

Id. at 2123 (quoting Joint Statement S7775 (quoting S.Rep. No. 103-111, p. 10 (1993), U.S.Code Cong. & Admin.News 1993, pp. 1892, 1899, 1900)).  Indeed, "prison security is a compelling state interest," and "deference is due to institutional officials' expertise in this area." Id. at 2124 n.13.  Therefore, should an inmate's request for religious accommodation "become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." Id. at 2125.

Despite this elevated burden placed on the state under RLUIPA, plaintiff has failed to articulate a valid claim that defendants violated his right to freely exercise his religion or retaliated against him for exercising that right.  First, plaintiff has not met his initial burden of coming forward with evidence to demonstrate that defendants' actions constituted a substantial burden on the exercise of his religious beliefs.  Plaintiff claims he is a one quarter Yaqui Native American, and that he participated in Native American spiritual activities in prison from 1974 to 2005. Complaint, p. 7.  He further claims defendant Benda "race profiled" him by telling other Native American prisoners that he is a member of the white supremacist Aryan Brotherhood or Aryan Family, in an attempt to gain security threat group ("STG") activity information and "attaching" it to him. Id., p. 8.  Plaintiff also claims that by doing so, defendant

1  Benda prevented his acceptance into the Native American prison community. Id.

2        Though he states he has applied to become one, plaintiff admitted in his deposition that he is not an

3  actual member of any federally recognized Native American tribe, nor is he a registered member of the

4  Yaqui tribe. Defendants' Motion for Summary Judgment ("Defendants' Motion"), Exhibit 1, Declaration

5  of Sara J. Olsen, Attachment A, Transcript of Deposition of Bobby Laythen Binford ("Binford

6  Transcript"), pp. 15-17.  Plaintiff does assert defendant Benda contacted the Yaqui tribe in an attempt to

7  prevent him from being enrolled as a member of that tribe and obtaining recognition as such. Complaint, p.

8  8-9.  However, he presents no evidence for this assertion.  Further, plaintiff admitted in his deposition that

9  it was the other Native American prisoners, and not any prison staff member, who told him he could no

10 longer attend the Native American religious events. Binford Transcript, pp. 46-47, 63-64.

11       Plaintiff does claim that it was the race profiling engaged in by defendant Benda that caused the

12 other Native American prisoners to prevent him from attending those religious events.  Again, however,

13 plaintiff has not come forward with actual evidence to support his claim.  He has attached a "personal

14 affidavit" by Clinton Larry, another prisoner, to his own motion. Plaintiff's Motion for Judgment as a

15 Matter of Law ("Plaintiff's Motion"), Exhibit 3.  In that affidavit, Mr. Larry states that defendant Benda

16 told him plaintiff was not a Native American or enrolled tribal member, but was a member of the AB and

17 AF, who was "infiltrating the Native American circle for his own personal gain." Id., Exhibit 3.

18       Defendant Benda, for his part, denies that he ever prevented plaintiff from participating in Native

19 American activities. Defendants' Motion, Exibit 3, p. 2.  While this might be said to create an issue of

20 material fact, the statements Mr. Larry attributes to defendant Benda do not in themselves show that any

21 "profiling" occurred on the basis of race.  That is, even taking what Mr. Larry says to be true, the mere fact

22 that defendant Benda may have told him one time that plaintiff was not a Native American or an enrolled

23 member of any tribe, and was a part of the Aryan Brotherhood and Aryan Family, does not alone evidence

24 an intent or effort to create a profile of plaintiff within the prison setting.  Further, there is no indication that

25 any such statements made by defendant Benda actually resulted in retaliation against plaintiff for exercising

26 his First Amendment right to freedom of religion.

27       Plaintiff has submitted two other personal affidavits from prisoners regarding his participation in

28 and relationship to the Native American prison community, but neither of them, even if they did contain

admissible evidence, specifically concern either defendant. Plaintiff's Motion, Exhibit 3.  Plaintiff also has

provided an inmate "kites" he submitted in relation to his Native American activities, but again, that kite

does not concern, or even mention, defendant Benda or defendant Aldana. Id., Exhibit 4.  Plaintiff, in

addition, has attached to his motion two "staff conduct grievance" forms containing allegations against

defendant Benda along the lines noted above. Id., Attachment D.  Once more, however, neither of those

documents include any evidence that supports the conclusory allegations made therein.

The record thus contains little, if any, evidence that defendants placed any burden on plaintiff's

exercise of his religious beliefs, i.e., his ability to engage in Native American spiritual activities, let alone a

substantial one.  Indeed, a copy of a serious infraction report provided by plaintiff indicates that, far from

acting improperly, defendant Benda had good cause for investigating plaintiff's alleged connection with the

Yaqui tribe:

> Inmate (I/M) Binford, Robert 630941 was subject of an investigation from 10/13/03 to
> 11/20/03 by the CBCC Intelligence and Investigations Unit (IIU) surrounding alleged
> Fraudulent activity.  On 10/13/03 at or about 4:30 (P.M.), I received a copy of an out
> going I/M letter authored by I/M Binford.  In the letter I/M Binford requests and
> describes how to make a Native American identification Card (I.D.) for the Pascula
> Yaqui tribe.  I/M Binford also instructs the recipient to make, and place an official
> Arizona State seal on the fraudulent I.D.  On 11/17/03 at about 10:00 (A.M.), I received
> a copy of the response to the above letter to I/M Binford, complete with the fraudulent
> identification card.  I retained the fraudulent I.D. card as evidence and let the original
> letter be delivered to I/M Binford.  At about 11:05 I contacted a Yaqui enrollment office
> with in [sic] the Arizona bureau [sic] of Indian Affairs.  I was informed that I/M Binford
> is not a registered Yaqui tribal member.  On 11/19/03 at or about 3:00 (P.M.) I
> conducted an interview of I/M Binford in the B-Unit duty office.  I/M Binford claimed
> that he was going to forward the I.D. card to the Yaqui tribe and that the card should
> not have been laminated.  I/M Binford went on to state that the Yaqui tribe is not in the
> United States and that his family are members of the tribe.  I concluded the interview
> and informed I/M Binford that he would receive an infraction for fraudulently
> manufacturing an I.D.

Id.  Accordingly, plaintiff's claim that his freedom of religion rights were violated or that he was retaliated

against for exercising those rights must fail as well.

C.   Access to the Courts

Inmates have "a constitutional right of access to the courts." Cornett v. Donovan, 51 F.3d 894, 897

(9th Cir. 1995).  That right "requires prison authorities to assist inmates in the preparation and filing of

meaningful legal papers" by providing them with "adequate law libraries or adequate assistance from

persons trained in the law." Lewis v. Casey, 518 U.S. 343, 346 (1996) (quoting Bounds v. Smith, 430 U.S.

817, 828 (1977)).  However, because "meaningful access to the courts is the touchstone" here, to prevail

on an access to courts claim, plaintiff must "demonstrate that the alleged shortcomings in the library or

legal assistance program hindered his efforts to pursue a legal claim." Cornett, 51 F.3d at 897 (citing

Bounds, 430 U.S. at 823); see also Lewis, 518 U.S. at 348 (inmate must show inadequacy of prison library

or legal assistance program caused actual injury or prejudice such as inability to meet filing deadline or

present claim). For example, plaintiff might show:

> [T]hat a complaint he prepared was dismissed for failure to satisfy some technical
> requirement which, because of deficiencies in the prison's legal assistance facilities, he
> could not have known. Or that he had suffered arguably actionable harm that he wished
> to bring before the courts, but was so stymied by inadequacies of the law library that he
> was unable even to file a complaint.

Lewis, 518 U.S. at 352.

Plaintiff claims that on December 17, 2004, he received a monetary settlement in a separate civil

rights action he had filed. Complaint, p. 7. He states that four days later, defendant Benda placed him in

administrative segregation for having engaged in STG activities and for introducing contraband into the

prison. Id., pp. 7, 10. Plaintiff asserts, however, that such placement was unreasonable in light of the fact

that the contraband actually turned out to be non-contraband tobacco, and that the package in which it was

contained had been approved. Id. This, plaintiff further asserts, leaves only the conclusion that defendant

Benda's actions were retaliatory in nature. Id., p. 10.

While in this instance clearly it appears plaintiff was not prevented from accessing the courts, and,

indeed, apparently did so successfully, certainly if plaintiff's allegations are true, he would have asserted a

sufficient retaliation claim. Plaintiff, however, has presented no evidence that defendant Benda knew of the

settlement before placing him in administrative segregation or that, even if they did, that this was the

reason why he was administratively segregated. The fact that the suspected contraband in fact turned out

not to be contraband, furthermore, does not itself demonstrate an intent on the part of defendant Benda to

retaliate against plaintiff for exercising his First Amendment rights. As such, plaintiff has offered nothing

more than mere conclusory allegations to support his claims.

Defendants, furthermore, note that plaintiff initially was placed in administrative segregation not by

either one of them, but rather by another prison official who is not a party to this action. Defendants'

Motion, Exhibit 2, Declaration of John Aldana ("Aldana Declaration"), p. 1, Attachment A. In addition,

while it was recommended that plaintiff remain in administrative segregation pending the outcome of the

1   investigation into his involvement in STG activities, neither defendant participated in or approved that

2   recommendation. Id., Attachment B.  While a mid-January 2005 review of plaintiff's classification status

3   resulted in a recommendation that plaintiff be kept in administrative segregation due to the still on-going

4   investigation, defendant Benda did not participate in that review, though defendant Aldana did sign off as

5   "concurring" with the recommendation. Id., Attachment C.  A further mid-August 2005 review, in which

6   defendant Aldana again concurred in the result, recommended plaintiff be released from administrative

7   segregation and promoted to close custody. Id., Attachment D.  Once more, defendants note that

8   defendant Benda did not participate in this review.

9          Defendant Benda and defendant Aldana state in their declarations, furthermore, that they received

10  no notice of plaintiff's settled lawsuit prior to August 2006. Id., Exhibit 2, p. 2; Exhibit 3, Declaration of

11  Terry Benda ("Benda Declaration"), p. 2.  Plaintiff has presented no evidence to demonstrate otherwise.

12  In addition, plaintiff's claims against defendant Aldana with respect to all of his retaliation claims, appear to

13  rest primarily on a theory of supervisory responsibility, which, as discussed above, is not a valid basis on

14  which to make a section 1983 claim.  For example, plaintiff alleges in general, conclusory terms that

15  defendant Aldana did not properly supervise or manage defendant Benda concerning his involvement in

16  placing him in administrative segregation. Complaint, p. 16-17.

17         Plaintiff does allege defendant Aldana failed to answer or address an appeal of his placement in

18  administrative segregation in early January 2005. Id., pp. 17-18.  He further claims that when defendant

19  Aldana "signed off" on his placement in administrative segregation, he knowingly did so without proper

20  cause and knowingly denied his right to appeal. Id., p. 18.  First, plaintiff has presented, and the record

21  contains, no evidence that he ever filed an appeal of his administrative segregation.  Likewise, plaintiff has

22  made no evidentiary showing that defendant Aldana's decision to concur in his continuing placement in

23  administrative segregation was improper, that defendant Aldana knew such concurrence was without

24  cause, or that defendant Aldana actually denied his right to appeal, whether properly or improperly. See

25  Defendants' Motion, Exhibit 2, Aldana Declaration, p. 1-2.

26         Lastly, plaintiff claims that defendant Benda conducted a "bad faith campaign" against him when he

27  confiscated 17 of his legal documents in early March 2005. Complaint, p. 9.  This, plaintiff asserts, was in

28  retaliation in part for his earlier complaints against defendant Benda. Id.  Defendant Benda states in his

declaration that he only confiscated eight pages of documents as contraband during a mid-March 2005 search of plaintiff's cell. Defendants' Motion, Exhibit 3, p. 2, Attachment A.  Indeed, plaintiff admitted he was not sure they were all legal documents, stating that they consisted primarily of rosters "placing" him as a Native American and witness statements from other prisoners regarding statements made about him. Id., Exhibit 1, Binford Transcript, pp. 25-26.

There does appear to be an issue of fact here as to the true number and nature of the documents alleged to have been confiscated.  Nevertheless, plaintiff has failed to show such confiscation was done for improper purposes, or that it inhibited his access to the courts.  As discussed above, to state a valid denial of access to the courts claim, plaintiff must demonstrate he suffered an actual injury or prejudice, such as the inability to meet a filing deadline or present a claim.  Plaintiff has made no showing, let alone even alleged, that the confiscation of his legal documents prevented him from meeting a court-imposed deadline or filing a claim.  In addition, plaintiff has not provided any evidence that the confiscation of the above-noted documents, or any of the other actions taken by defendants discussed herein, were done for the purposes of retaliation.  As such, this claim must fail as well.

D.   Right to Petition Government for Redress of Grievances

Prisoners "have the right to petition the Government for redress of grievances." Cruz v. Beto, 405 U.S. 319, 321 (1972); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (First Amendment precludes prison authorities from penalizing prisoners from exercising right to petition government for redress of grievances).  Further, "a chilling effect on a prisoner's First Amendment right to file prison grievances is sufficient to raise a retaliation claim." Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003); Bradley, 64 F.3d at 1279 (right of meaningful access to courts extends to established prison procedures).

Plaintiff claims he filed a grievance in January 2005, that was routed to the same officials about whom he was complaining, which had the effect of chilling his complaints. Complaint, p. 9.  In addition, plaintiff alleges defendant Benda "successfully chilled" his "appeals to the Superintendent [sic]." Id., pp. 9-10.  Plaintiff, however, fails to point to the particular January 2005 grievance he states was routed to the same prison officials of whom he complained.  There is a "staff conduct grievance" attached to plaintiff's complaint, in which plaintiff alleges misconduct on the part of defendant Benda. Id., p. 21.  However, that grievance appears to have been addressed by a different prison official. Id.

Plaintiff claims that this official was defendant Benda's supervisor, which he implies contributed to the chilling effect. Id., p. 9. However, it is unclear why alleged prison staff member misconduct that is investigated by that staff member's supervisor would be improper. Indeed, it seems the supervisor would be the most appropriate person to investigate, given the fact that the supervisor is the one responsible for supervising the staff member. Plaintiff's argument that defendant Aldana was remiss in failing to properly supervise defendant Benda, discussed above, indicates that plaintiff himself supports such a view. In any event, plaintiff has not explained how an investigation conducted by the alleged malfeasant's supervisor would chill his ability to petition prison authorities through the grievance process.

Plaintiff also fails to show exactly how defendant Benda chilled his appeals to the superintendent. He does claim, as noted above, that defendant Benda's confiscation of his legal documents was done "in part" due to his "complaints" against defendant Benda for violating his civil rights. Id. Again, however, plaintiff provides no evidentiary basis for this assertion, and thus the undersigned finds it to be completely conclusory. As such, in addition to not supporting a claim for retaliation against him for exercising his right to access the courts, this allegation cannot support a section 1983 claim of retaliation for exercising his right to petition the government for redress of his grievances.

III.    Plaintiff Has Failed to Establish a Violation of His Due Process Rights

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "no state shall 'deprive any person of life, liberty, or property without due process of law.'" Toussaint v. McCarthy, 801 F.3d 1080, 1089 (9th Cir. 1986). There are both procedural and substantive components to due process protections. With respect to procedural due process, a section 1983 claim encompasses three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993).

Substantive due process protects individuals from arbitrary and unreasonable government action which deprives any person of life, liberty, or property. Kawaoka v. City of Arroyo Grande, 17 F.3d 1227, 1234 (9th Cir. 1994). To establish a substantive due process violation, the government's action must have been "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Sinaloa Lake Owners, 882 F.2d 1398, 1407 (9th Cir. 1989) (quoting Village of Euclid

1    v. Ambler Realty Co., 272 U.S. 365, 395 (1926)); Bateson v. Geisse, 857 F.2d 1300, 1303  (9th Cir.1988).

2    Further, in the prison context, a liberty interest will be found to exist only "when a change occurs in

3    confinement that imposes an 'atypical and significant hardship . . . in relation to the ordinary incidents of

4    prison life.'" Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000) (quoting Sandin v. Conner, 515 U.S.

5    472, 484 (1995); Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003).

6          Here, plaintiff has failed to show that either his procedural or substantive due process rights were

7    violated by defendants' actions.  Plaintiff's due process claims appear to be based on his placement in

8    administrative segregation, and on the allegation that his right to appeal that placement was improperly

9    hindered or denied.  First, prisoners have "no constitutional right to a particular classification status."

10   Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987); see also Moody v. Daggett, 429 U.S. 78, 88

11   n. 9 (rejecting claim that prisoner classification in federal system invoked due process protections).  The

12   Ninth Circuit expressly has held that an inmate has no liberty interest in being free from administrative

13   segregation. Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993).  Thus, plaintiff cannot state a claim for

14   relief under 42 U.S.C. § 1983 with respect to a change in his classification status.

15         With respect to plaintiff's claim that defendants prevented him from being able to appeal his being

16   placed in administrative segregation, that claim also must fail.  As explained above, plaintiff has failed to

17   come forth with any evidence to support his claim that he in fact appealed his placement in administrative

18   segregation, let alone that defendant Aldana failed to answer or address his appeal or that he knowingly

19   "signed off" on his placement for the purpose of denying his right to appeal.  Similarly, plaintiff presents no

20   evidence that defendant Benda participated in hindering or preventing him from appealing or being able to

21   appeal his change in classification status.  His additional claim that defendant Benda chilled his appeals to

22   the prison's superintendent is equally lacking in factual support. See Complaint, pp. 9-10.  As such, he has

23   failed to assert a valid due process claim.

24   IV.   Plaintiff Has Not Demonstrated that He Was Denied Equal Protection Under the Law

25         The Equal Protection Clause requires that all persons similarly situated be treated similarly by the

26   government.  Inmates are protected under the Equal Protection Clause against invidious discrimination.

27   Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Lee v. Washington, 390 U.S. 333, 334 (1968).  To set

28   forth a *prima facie* violation of the Equal Protection Clause a plaintiff first must prove a discriminatory

1    intent or purpose.  Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 265

2    (1977); Bagley v. CMC Real Estate Corp., 923 F.2d 758, 763 (9th Cir. 1991).  Conclusory allegations by

3    themselves do not establish an equal protection violation without further proof of invidious discriminatory

4    intent.  See Village of Arlington Heights, 429 U.S. at 265.

5         Plaintiff must "show that he was treated differently from other inmates because he belonged to a

6    protected class." Seltzer-Bey v. Delo, 66 F.3d 961, 964 (8th Cir. 1995); see also Barren v. Harrington, 152

7    F.3d 1193, 1195 (9th Cir. 1998) (to state claim under section 1983, plaintiff must show intent or purpose to

8    discriminate against him based upon membership in protected class).  The fact that plaintiff is a prisoner,

9    however, does not itself qualify him as a member of a protected class for Equal Protection Clause

10   purposes. See Wolff, 418 U.S. at 556 (prisoners protected from invidious discrimination based on race);

11   Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997) (inmates protected from intentional discrimination

12   based on religion).

13        Prisoners also "do not constitute a suspect class." Pryor v. Brennan, 914 F.2d 921, 923 (7th Cir.

14   1990); Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989); Thornton v. Hunt, 852 F.2d 526, 527 (11th Cir.

15   1988).  That is, "[t]he status of incarceration is neither an immutable characteristic, nor an invidious basis

16   of classification." Moss, 886 F.2d at 690 (internal citations omitted).  Further, when a suspect class is not

17   implicated, the court must determine whether the alleged discrimination is "patently arbitrary and bears no

18   rational relationship to a legitimate governmental interest." Vermouth v. Corrothers, 827 F.2d 599, 602

19   (9th Cir. 1987) (citation omitted).

20        Here, plaintiff has alleged defendants violated his equal protection rights by race profiling him as a

21   member of a white supremacist group, thereby causing him to be stigmatized and lose standing within the

22   Native American prison community.  As with his other claims discussed above, however, plaintiff merely

23   has set forth conclusory allegations regarding defendants' actions, and once more has failed to come forth

24   with reliable evidence establishing discriminatory intent or purpose.  As noted above, plaintiff admits he is

25   not a registered member of any Native American tribe.  He further admits it was the Native American

26   prisoners themselves who prevented him from attending Native American religious events, rather than

27   defendants or any other prison staff member.

28        Plaintiff's claim here thus rests entirely on his argument that defendants' stigmatizing him as being

REPORT AND RECOMMENDATION
Page - 14

part of a white supremacist group constitutes invidious discrimination.  Even if this constituted a proper basis for finding invidious discrimination can occur, an issue with respect to which the undersigned makes no determination, plaintiff again has not shown defendants actually engaged in such activity.  Other than the one statement from Mr. Larry discussed above, plaintiff has not come forth with any evidence to show defendants told other prisoners or staff members he was not a Native American, was a member of a white supremacist group or was attempting to "infiltrate" the Native American prison community.

Even crediting Mr. Larry's affidavit regarding the statements defendant Benda allegedly made to him as true, furthermore, those statements alone do not show defendant Benda had an intent to invidiously discriminate against plaintiff when he made them.  That is, such statements made on one occasion to one prisoner against another, in this case plaintiff, are insufficient to establish defendant Benda acted with the purpose or plan to discriminate.  In addition, Mr. Larry declares in his affidavit that he denied the truth of defendant Benda's statements, and there is no further evidence that defendant Benda made any more such statements to other prisoners or staff members.   Thus, to the extent such statements could be conceived as being discriminatory, it appears defendant Benda stopped making them.  Lastly, as noted above, it appears defendant Benda had good reason for investigating plaintiff's connection with the Yaqui tribe.  Therefore, undersigned finds plaintiff has alleged no valid equal protection claim.

V.    Plaintiff's Slander Claim

Plaintiff raises a slander claim in his complaint, alleging defendant Benda falsely identified him as a confidential informant. Complaint, p. 11.  Defendants first argue plaintiff's claim that they slandered or defamed him does not entitle him to relief under section 1983, as he has no constitutional right to be free from slander or defamation.  While true, the Court still may retain supplemental jurisdiction over this allegation made by plaintiff as a state law claim.  It is only where "there is no independent basis for federal jurisdiction," that is, only where the federal claim or claims are "absolutely devoid of merit or obviously frivolous," that supplemental jurisdiction does not attach.  Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995) (citation omitted); Hunter v. United Van Lines, 746 F.2d 635, 649 (9th Cir. 1985) (federal court jurisdiction over state-law claim is entirely derivative of court's jurisdiction over federal claim).

Although, as discussed herein, plaintiff's federal claims have been found to ultimately be without merit, there is no argument that this Court lacked proper jurisdiction over those claims in the first place.

Further, the decision to retain jurisdiction over plaintiff's state law slander claim is entirely within the Court's discretion. See Brady, 51 F.3d at 816; see also United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) (supplemental jurisdiction is doctrine of discretion).  For supplemental jurisdiction to apply, in addition to the requirement that there be "a sufficiently substantial federal claim," there also must be "a common nucleus of operative fact between the state and federal claims." Gilder v. PGA Tour, Inc., 936 F.2d 417, 421 (9th Cir. 1991). In deciding whether to retain jurisdiction, the Court weighs other "factors such as economy, convenience, fairness, and comity" as well. Brady, 51 F.3d at 816.

Here, the above factors weigh in favor of retaining jurisdiction over plaintiff's slander claim.  The slander claim arises from a common nucleus of operative fact.  That is, plaintiff's state law slander claim stems from the same set of factual allegations, i.e., that defendants were attempting to retaliate against him for exercising his First Amendment rights and to chill his ability to redress his grievances with prison authorities.  Factors such as judicial economy, the convenience of deciding all of plaintiff's claims in one forum, and fairness to all of the parties involved, furthermore, favor the Court retaining its jurisdiction here.  Finally, there appear to be no issues of comity, such that declining to assert that jurisdiction would be inappropriate.

Defendants next argue plaintiff has failed to demonstrate a valid claim of slander or defamation. The undersigned agrees.  "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Right-Price Recreation, LLC v. Connells Prairie Community Council, 146 Wash.2d 370, 382 (2002) (quoting Restatement (Second) of Torts § 559 (1977)).  "When a defendant in a defamation action moves for summary judgment, the plaintiff has the burden of establishing a prima facie case on all four elements of defamation: falsity, an unprivileged communication, fault, and damages." LaMon v. Butler, 112 Wash.2d 193, 197 (1989).  In addition, "[t]he prima facie case must consist of specific, material facts, rather than conclusory statement" as to each element of defamation. Id. (emphasis added).

Plaintiff has failed to set forth the requisite specific, material facts necessary to survive summary judgment here.  For example, he claims that during a state court pre-trial hearing held in early May 2005, defendant Benda slandered him by falsely identifying him as a confidential informant to the prosecuting attorney for Clallam County. Complaint, p. 11.  However, plaintiff provides no context for this claim of

REPORT AND RECOMMENDATION
Page - 16

1   slander.  That is, there is no indication as to what kind of hearing this was, the nature of the case to which

2   the hearing pertained, and the purpose for which hearing was held.  Most importantly, however, plaintiff

3   has not set forth the specific statement he alleges constituted slander.  Accordingly, the undersigned finds

4   plaintiff has not alleged a valid slander claim.

5   VI.   Defendants' Are Not Entitled to Qualified Immunity

6           Under the doctrine of qualified immunity, state officials "performing discretionary functions [are

7   protected] from liability for civil damages insofar as their conduct does not violate clearly established

8   statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald,

9   457 U.S. 800, 818 (1982); Somers v. Thurman, 109 F.3d 614, 617 (9th Cir. 1997).  Defendants argue that

10  they did not violate plaintiff's constitutional rights, and that even if they had, they are entitled to qualified

11  immunity.  Specifically, defendants assert that plaintiff has failed to articulate how any of his rights were

12  violated, and that, in any event, they reasonably could have believed their actions were proper.

13          Prior to determining whether defendants are entitled to qualified immunity, however, the Court first

14  must determine whether plaintiff "has alleged the deprivation of an actual constitutional right at all." Conn

15  v. Gabbert, 526 U.S. 286, 290 (1999).  If not, the issue of qualified immunity does not come before the

16  Court. Id. at 293.  When making this initial determination, the Court must view the facts "in the light most

17  favorable to the party asserting the injury." Saucier v. Katz, 533 U.S. 194, 201 (2001).  In this case, as

18  discussed above, plaintiff has failed to sufficiently allege a violation of his constitutional rights.  That is, he

19  has not demonstrated defendants retaliated against him for exercising his First Amendment rights or

20  established that his due process or equal protection rights were violated.  As such, the doctrine of qualified

21  immunity does not come into play here.

22  VII.  Other Issues Raised by Plaintiff

23          Plaintiff has raised two additional issues both in his motion/response to defendants' motion for

24  summary judgment and in his surreply.  Each such issue shall be addressed separately below.

25          A.   Plaintiff's Eighth Amendment Claim

26          Plaintiff alleges in his motion/response to defendants' motion for summary judgment that the

27  actions of defendants endangered him in violation of his Eighth Amendment rights. Plaintiff's Motion, p. 3.

28  He further alleges that the actions of correctional officer Tom Dacus, who was acting on defendants'

REPORT AND RECOMMENDATION
Page - 17

behalf, endangered him as well. Id., p. 6.  Such allegations, however, are without merit.  First, Mr. Dacus is not a party to this action.  Second, plaintiff has failed to set forth any specific facts showing Mr. Dacus was acting as defendants' agent or otherwise on their behalf.  Third, plaintiff did not assert  any Eighth Amendment claim in his complaint, nor has he amended or moved to amend his complaint to include one. He cannot now raise it during summary judgment proceedings.

Even if the complaint could be read to contain such a claim, plaintiff has not sufficiently alleged one.  The Eighth Amendment prohibits those "punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society . . . or which involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 102-03 (1976) (citations omitted).  To state an Eight Amendment claim, plaintiff must satisfy two requirements.  First, the deprivation alleged "must be, objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citation omitted). That is, the prison official's "act or omission must result in the denial of 'the minimum civilized measure of life's necessities.'" Id.  For claims based on failure to prevent harm, plaintiff also must show he was "incarcerated under conditions posing a substantial risk of serious harm." Id.

In addition to this "objective component," there is a subjective one. Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996).  The prison official therefore also "must have a 'sufficiently culpable state of mind.'" Farmer, 511 U.S. at 834 (citation omitted); Helling v. McKinney, 509 U.S. 25, 33 (1993) ("[A] claim that a prisoner's confinement violate[s] the Eighth Amendment requires an inquiry into the prison officials' state of mind.").  This state of mind "is one of 'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834.  In other words, liability under the Eighth Amendment "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Id. at 835 (citation omitted).   An official thus will not be liable:

> [U]nless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harms exists, and he must also draw the inference.

Id. at 837; see also Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  As such, a prison "official's failure to alleviate a significant risk that he should have perceived but did not," cannot "be condemned as the infliction of punishment." Id. at 838.

Here, while plaintiff claims the actions of defendants endangered him, he has not demonstrated that

1 either of them knew of or disregarded an excessive risk to his health or safety or were aware of facts from

2 which they could and did infer a substantial risk of serious harm existed.  Indeed, contrary to his claims on

3 this issue, plaintiff even has failed to show defendants acted in such a manner to endanger, let alone

4 actually harm, him.  Accordingly, the undersigned finds no Eight Amendment violation here.

5         B.     <u>Plaintiff's Request for a Protective Order</u>

6         Finally, in his surreply, plaintiff requests that the Court order defendants and the Washington State

7 Department of Corrections ("DOC") to transfer him to another prison, and to restrain DOC officials from

8 initiating interrogations that ask him to provide confidential information which result in retaliation or denial

9 of privileges. (Dkt. #26).  Plaintiff's request, however, is not properly framed in a motion for the relief he

10 requests.  Further, he has not shown that the two defendants named in this case have the power to transfer

11 him, that they are obligated to do so, or that the relief requested is necessary to cure the potential harm

12 alleged.

13         In addition, neither the DOC nor any other DOC officials have been made parties to this action.

14 However, "[i]t is elementary that one is not bound by a judgment in personam resulting from litigation in

15 which he is not designated as a party or to which he has not been made a party by service of process."

16 <u>Radio Corp. v. Hazeltine Research, Inc.</u>, 395 U.S. 100, 110 (1969).  In other words, "a court has no

17 power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the

18 defendant." <u>Id.</u>  As such, the Court cannot grant plaintiff's request with respect to these third parties.

19 CONCLUSION

20         Defendants have met their burden of demonstrating that there are no genuine issues of material

21 fact and that they are entitled to judgment as a matter of law.  Plaintiff has failed in all instances to allege

22 facts sufficient to form a constitutional violation or to establish a claim of slander.  Accordingly, the

23 undersigned recommends that the Court GRANT defendants' motion for summary judgment (Dkt. #23)

24 and DENY plaintiff's motion for judgment as a matter of law (Dkt. #24).  The undersigned further

25 recommends that all other pending motions currently before the Court, including defendants' motion to

26 continue date for filing joint status report (Dkt. #27), be dismissed as moot.

27         Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days

28 from service of this Report and Recommendation to file written objections thereto. <u>See also</u> Fed. R. Civ.

1  P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas
2  v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk
3  is directed set this matter for consideration on **July 27, 2007**, as noted in the caption.
4          DATED this 29th day of June, 2007.
5
6
7                                    _Karen L. Strombom_
8                                    Karen L. Strombom
                                     United States Magistrate Judge
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REPORT AND RECOMMENDATION
Page - 20